**FILED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FEB **1 8** 2015

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES OF AMERICA, )
)
    Plaintiff, )
)
v. )  Nᴏ
)
ROMEL TOMLIN, )  **4:15CR00081 RWS/NCC**
TYRA TOMLIN, )
KEITH HEBB, and )
JERMAINE IRONS, )
)
    Defendants. )

## COUNT ONE

The Grand Jury charges that:

At all times pertinent to the charges in this indictment:

### A.   INTRODUCTION

1.    Defendant KEITH HEBB and Defendant JERMAINE IRONS resided together in

St. Louis, Missouri, in the Eastern District of Missouri.

2.    Defendant TYRA TOMLIN, a former resident of St. Louis, Missouri, resided in the

state of Arizona, including locations in and around Phoenix, Arizona.

3.    Defendant ROMEL TOMLIN resided in the states of Texas and Arizona, including

locations in and around Grand Prairie, Texas and in and around Phoenix, Arizona.  ROMEL

TOMLIN is TYRA TOMLIN's uncle.

4.    The Internal Revenue Service (hereinafter "IRS") was an agency of the United

States Department of the Treasury responsible for enforcing and administering the tax laws of the

United States and collecting taxes owed to the Treasury of the United States.

1

5. The IRS maintained multiple toll-free "800" numbers to serve individual taxpayers including, but not limited to, a "Refund Hotline." By calling and utilizing the Refund Hotline, an individual taxpayer could obtain income tax refund status information.

6. Under the United States Department of the Treasury's "Treasury Offset Program," if an individual owes money to the federal government because of a delinquent debt, the Treasury Department can offset or reduce that individual's federal income tax refund to satisfy the debt. As part of the Treasury Offset Program, the United States Department of the Treasury maintained toll-free "800" numbers whereby an individual debtor could, by calling the Treasury Offset Program Call Center, obtain information about any such debts or offsets, including whether that individual's federal income tax refund could or would be offset or reduced.

7. A "means of identification" is any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including a name, Social Security number, or date of birth.

8. UMOM New Day Centers (hereinafter "UMOM"), was a not for profit organization dedicated to providing programs and services for the homeless in and around Phoenix, Arizona. At all times relevant, TYRA TOMLIN was an employee of UMOM and held various positions with UMOM including the position of Case Manager. As an employee of UMOM, TYRA TOMLIN had access to UMOM client files and UMOM client means of identification.

9. In order to facilitate a direct deposit of an income tax refund into a specific checking or savings account, bank routing and account information would be provided as part of an individual federal income tax return filed with the IRS utilizing Form 1040, 1040A, and 1040EZ. Bank of America, U.S. Bank and Commerce Bank were financial institutions which

2

received by means of wire communications in interstate commerce, namely wire or automated clearing house "ACH" transfers, direct deposits of federal income tax refunds pursuant to account information included with filed federal income tax returns. Each of these financial institutions also maintained a toll-free "800" customer service number whereby bank customers could obtain general account information, including, but not limited to, deposit and balance information for individual checking and savings accounts.

10. Money remitting services, such as Western Union, operated at various locations in the Eastern District of Missouri and elsewhere whereby individuals could send and receive money via interstate wire.

## B. THE SCHEME AND CONSPIRACY

11. Beginning on or about sometime prior to 2009, with the exact date unknown to the Grand Jury, and continuing until on or about July 12, 2012, with the exact date unknown to the Grand Jury, in the Eastern District of Missouri and elsewhere,

### ROMEL TOMLIN,
### TYRA TOMLIN,
### KEITH HEBB, and
### JERMAINE IRONS,

the defendants herein, and other persons known and unknown to the Grand Jury, did knowingly and willfully conspire, combine, confederate, and agree with each other and with other persons known and unknown to the Grand Jury to devise a scheme and artifice to defraud and to obtain money and property of the United States by means of materially false and fraudulent pretenses, representations, and promises, by submitting and causing to be submitted fraudulent federal income tax returns for other individuals in order to claim and receive federal tax refunds based upon false, fictitious and fraudulent information and thereby defraud the United States and obtain

3

the fraudulent payment of income tax refunds from the United States Department of the Treasury

through the Internal Revenue Service for Tax Years 2008, 2009, 2010, and 2011.

## C.    MANNER AND MEANS

12.    It was part of the scheme to defraud and conspiracy that:

### ROMEL TOMLIN,
### TYRA TOMLIN,
### KEITH HEBB, and
### JERMAINE IRONS,

the defendants herein, and others, in the Eastern District of Missouri and elsewhere, devised and

executed a scheme to obtain, and to help others obtain, payment of false, fictitious and fraudulent

claims for tax refunds from the IRS by electronically filing false, fictitious and fraudulent United

States Individual Income Tax Returns, Form 1040, 1040A, and 1040EZ, with the IRS for the tax

years 2008, 2009, 2010, and 2011, and thereby claiming and receiving federal tax refunds to which

the defendants knew they and others were not entitled, and for the purpose of executing the scheme

and to further the conspiracy, directed that the fraudulently claimed tax refunds be direct

deposited, by wire or ACH transfer, by the IRS into bank accounts controlled by the defendants.

13.    Each of the false and fraudulent individual federal tax returns prepared and

electronically filed by, and caused to be prepared and electronically filed by, ROMEL TOMLIN,

TYRA TOMLIN, KEITH HEBB, and JERMAINE IRONS, used the means of identification of an

individual and included a W-2 statement that the defendants created, and caused to be created,

which included false and fictitious information regarding the individual's employer, wages, and

withholdings.

14.    As part of this scheme, the tax returns were false in one or more of the following

ways:  First, each IRS Form W-2 contained a false statement regarding the taxpayer's

employment; Second, each IRS Form W-2 contained a false amount of wages paid, a false amount

4

of federal income tax withheld, and other false information; and Third, the returns themselves incorporated and contained the false information from the W-2 and also contained additional false information including, but not limited to, information regarding claimed dependents, which would also involve the use of means of identification, including names and Social Security numbers, as part of the claim.

15.     As part of the scheme, these false and nonexistent employment relationships, wages, and withholding amounts served to create and increase the amount of refunds claimed on the false tax returns. As part of the scheme, these false and nonexistent dependent relationships served to create and increase the amount of the fraudulent refund.

16.     As part of the scheme, in the Eastern District of Missouri and elsewhere, ROMEL TOMLIN, TYRA TOMLIN, KEITH HEBB, and JERMAINE IRONS obtained, collected, used, shared, and transferred means of identification, including names and Social Security numbers, of various individuals for the purpose of filing false, fictitious and fraudulent federal tax returns.

17.     As part of the scheme, ROMEL TOMLIN electronically submitted to the IRS, United States Individual Income Tax Returns, Form 1040, 1040A, 1040EZ, in the names of various individuals, using an individual's means of identification in order to fraudulently obtain payments of tax refunds.

18.     As part of the scheme ROMEL TOMLIN, TYRA TOMLIN, KEITH HEBB, and JERMAINE IRONS established bank accounts and used existing bank accounts such that the direct deposit of fraudulent refunds could be received by means of wire or ACH transfer in the Eastern District of Missouri and elsewhere.

19.     As part of the scheme, the defendants communicated with each other and met with each other regarding the scheme and in order to execute the scheme.

5

20.     As part of the scheme, in some instances, the individual was aware that a federal

tax return would be filed using their name and Social Security number.  In other instances, the

individual was not aware a federal tax return was being filed using their name and Social Security

number and had not given authorization for a return to be filed or a refund claimed in their name or

with their Social Security number.

21.     As part of the scheme, federal income tax returns were typically filed electronically

by ROMEL TOMLIN from locations outside the Eastern District of Missouri utilizing information

obtained, collected, used, shared, and transferred by ROMEL TOMLIN, TYRA TOMLIN, KEITH

HEBB, and JERMAINE IRONS in the Eastern District of Missouri and elsewhere.

22.     As part of the scheme, the false, fictitious, and fraudulent individual federal tax

returns included instructions for having all, or a portion, of the tax refund directly deposited to a

back account in the name of, and controlled by, ROMEL TOMLIN, TYRA TOMLIN, KEITH

HEBB, or JERMAINE IRONS.  Said bank accounts included checking and savings accounts at

financial institutions such as Bank of America, U.S. Bank, and Commerce Bank.  All or a portion

of the refunds deposited into said bank accounts were typically withdrawn the same day the

deposit was received.  Withdrawals from said accounts typically occurred at branches of those

banks, including branches located in the Eastern District of Missouri and elsewhere.

23.     As part of the scheme, ROMEL TOMLIN, TYRA TOMLIN, KEITH HEBB, and

JERMAINE IRONS, in the Eastern District of Missouri and elsewhere, caused to be transmitted in

interstate and foreign commerce by means of wire communications, certain writings, signs,

signals, and sounds, including wire transfers and ACH transfers of federal income tax refunds

from the IRS, as well as wire communications as set forth below:

a.  "means of identification" for Eastern District of Missouri residents were typically collected by KEITH HEBB and JERMAINE IRONS in the Eastern District of Missouri and then communicated and transferred to ROMEL TOMLIN by means of wire, that is, telephone calls to and from ROMEL TOMLIN providing, and relating to, such information;

b.  toll-free 800 numbers, including those numbers maintained by the IRS to provide tax refund status information, numbers maintained by the United States Department of the Treasury as part of Treasury Offset Program, and numbers maintained by Bank of America, U.S. Bank and Commerce Bank for customer service, were typically used by ROMEL TOMLIN, TYRA TOMLIN, KEITH HEBB, and JERMAINE IRONS, in the Eastern District of Missouri and elsewhere, to access taxpayer information prior to filing returns and to track taxpayer refunds after the returns were filed by means of wire, that is, telephone calls to such toll-free 800 numbers; and

c.  TYRA TOMLIN, KEITH HEBB, and JERMAINE IRONS received fraudulent refunds in bank accounts held in their name, and on one or more occasions, at bank branches in the Eastern District of Missouri and elsewhere, withdrew all, or a portion of, the refunds received from their bank account, including both counter withdrawals and ATM withdrawals, and then sent, and caused to be sent, all, or a portion of, the refund amount to ROMEL TOMLIN by means of wire, that is, one or more money transfers sent by Western Union from the Eastern District of Missouri to Texas.

24.  During the course of the scheme, defendants ROMEL TOMLIN, TYRA TOMLIN, KEITH HEBB, or JERMAINE IRONS, and others filed and caused to be filed approximately 93 false and fraudulent federal income tax returns that falsely claimed approximately $335,297 in false, fictitious and fraudulent refunds from the United States.  Based upon the total amount of all

7

false, fictitious and fraudulent refund claims paid, the actual loss to the United States government is approximately $184,464.22 or more.

D.    **ACTS IN FURTHERANCE OF THE SCHEME AND CONSPIRACY**

25.    In furtherance of the scheme and the conspiracy, and to execute the scheme and accomplish the objectives of the conspiracy, in the Eastern District of Missouri and elsewhere,

a.    On or about sometime between 2008 and 2009, TYRA TOMLIN introduced KEITH HEBB and JERMAINE IRONS to her uncle, ROMEL TOMLIN, for the purpose of recruiting KEITH HEBB and JERMAINE IRONS to participate in the scheme. As part of that introduction and recruitment, and to explain their respective roles in the scheme, ROMEL TOMLIN, TYRA TOMLIN, KEITH HEBB, and JERMAINE IRONS met in person, on one or more occasions, in the Eastern District of Missouri, and agreed that KEITH HEBB and JERMAINE IRONS would:

(i)    collect "means of identification" in the Eastern District of Missouri necessary for filing individual federal income tax returns, including names and Social Security numbers;

(ii)    use, share, and transfer the "means of identification" information and other information to ROMEL TOMLIN, in Texas and elsewhere, such that ROMEL TOMLIN could file federal tax returns with the means of identification provided;

(iii)    establish bank accounts and use existing bank accounts in the Eastern District of Missouri for the purpose of receiving a direct deposit of claimed tax refunds and provide said bank account information to ROMEL TOMLIN in Texas and elsewhere such that the electronically filed federal tax returns would include the bank routing numbers and account

8

numbers specific to a bank account in the name of, and controlled by, either KEITH HEBB or
JERMAINE IRONS; and

(iv)    send, upon receipt of the claimed tax refund, a portion of the tax
refund to ROMEL TOMLIN in Texas and elsewhere, and thereby, as participants in the scheme,
be entitled to keep a portion of the tax refund received for their own use.

b.    On or about February 28, 2009, a federal income tax return was
electronically filed in the name of Y.A. utilizing the email address "romel_tomlin@yahoo,"
identifying Crane Company as the employer on the W-2 form, and directing the refund be
deposited in a Bank of America account in the name of, and controlled by, KEITH HEBB. On or
about January 15, 2010, a federal income tax return was electronically filed on behalf of the same
taxpayer, Y.A., utilizing the same Social Security number, identifying Walmart as employer on the
W-2 form and directing the refund be deposited in a Bank of America account in the name of, and
controlled by, JERMAINE IRONS. Y.A. resided in the Eastern District of Missouri but not at the
residence identified on either return. Neither Crane Company nor Walmart employed Y.A. at any
time, paid wages to Y.A at any time, or withheld federal income tax as to Y.A at any time.

c.    On or about March 30, 2010, a federal income tax return was electronically
filed in the name of T.A. utilizing the email address "tomlinromel@yahoo," identifying Dierbergs
as the employer on the W-2 form, and directing that the claimed federal tax refund be deposited in
a Woodforest National Bank account in the name of, and controlled by, ROMEL TOMLIN. On
or about April 1, 2010, a return was electronically filed in the name of T.B., utilizing the email
address "tomlinromel@yahoo," identifying Dierbergs as employer and directing the refund be
direct deposited in a Bank of America account in the name of, and controlled by, JERMAINE
IRONS. As to both T.A.'s return and T.B.'s return, the federal tax return falsely identified the

9

taxpayer as living at a street address on Delmar in St. Louis, Missouri, 63108, falsely identified their occupation as "clerk" and falsely claimed wages, as reflected on the return and the W-2, from St. Louis based employer Dierbergs in the amount of $24,910, and identified federal income tax withheld by Dierbergs in the amount $1,330. Dierbergs did not employ either T.A. or T.B. at any time, did not pay wages to T.A. or T.B at any time, or withhold federal income tax as to T.A. or T.B. at any time. The returns for T.A. and T.B. were electronically filed from IP address 99.129.146.181. From March 31, 2010 to April 1, 2010, the IP address 99.129.146.181 was assigned to an AT&T account in the name of ROMEL TOMLIN of Grand Prairie, Texas.

        d.     On or about January 19, 2011, a federal income tax return was filed in the name of M.S., utilizing Social Security number xxx-xx-2154, identifying Professional Employment as the employer on the W-2 form and directing that the refund be deposited into a U.S. Bank account in the name of, and controlled by, TYRA TOMLIN. On or about January 18, 2011, a federal income tax return for tax year 2010 was filed in the name of A.T. utilizing Social Security number xxx-xx-8046, identifying Professional Employment as the employer on the W-2 form and directing that the refund be deposited into the same U.S. Bank account in the name of TYRA TOMLIN. The previous year, on or about February 9, 2010, a federal income tax return for tax year 2009 was filed in the name of A.T., utilizing Social Security number xxx-xx-8046, identifying Walmart as employer on the W-2 form and directing that the refund be deposited into a Commerce Bank account in the name of, and controlled by, KEITH HEBB. Professional Employment did not employ M.S. at any time, pay wages to M.S. at any time, or withhold federal income tax as to M.S. at any time. Neither Professional Employment nor Walmart employed A.T. at any time, paid wages to A.T. at any time, or withheld federal income tax as to A.T. at any time.

      e.      On or about February 25, 2010, a federal income tax return was filed in the name of K.D., utilizing Social Security number xxx-xx-3463. It was electronically filed from IP address 99.58.238.15. On February 25, 2010, the IP address 99.58.238.15 was assigned to an AT&T account in the name of ROMEL TOMLIN of Grand Prairie, Texas. Wages in the amount of $24,910 were asserted and the submitted W-2 form identified Walmart as the employer. Walmart did not employ K.D. at any time, pay wages to K.D. at any time, or withhold federal income tax as to K.D. at any time.

      f.      Other false federal income tax returns, typically falsely identifying Walmart or Dierbergs as the employer, with an asserted false wage of $24,910, as reflected on both the filed return and the W-2, include:

      (i)      a return filed in the name of J.B. on or about February 11, 2010 utilizing Social Security number xxx-xx-4531. The refund claimed on February 11, 2010 on behalf of J.B. was directed to be deposited into a Commerce Bank account of KEITH HEBB;

      (ii)      a return filed in the name of C.B. on or about January 25, 2010 utilizing Social Security number xxx-xx-0874. The refund claimed on January 25, 2010 on behalf of C.B. was directed to be deposited into a Bank of America account of JERMAINE IRONS;

      (iii)      a return filed in the name of K.C. on or about January 28, 2010 utilizing Social Security number xxx-xx-0644. The refund claimed on January 28, 2010 on behalf of K.C. was directed to be deposited into a Commerce Bank account of KEITH HEBB;

      (iv)      a return filed in the name of R.H. on or about February 11, 2010 utilizing Social Security number xxx-xx-5394. The refund claimed on February 11, 2010 on behalf of R.H. was directed to be deposited into a Commerce Bank account of KEITH HEBB;

11

(v)     a return filed in the name of D.W. on or about February 24, 2010

utilizing Social Security number xxx-xx-4998. The refund claimed on February 24, 2010 on

behalf of D.W. was directed to be deposited to more than one account. Part of the refund was

directed to be deposited into a Commerce Bank account of KEITH HEBB. Part of the refund was

directed to be deposited into the Woodforest National Bank account of ROMEL TOMLIN;

(vi)     a return filed in the name of P.C. on or about January 21, 2010

utilizing Social Security number xxx-xx-7502. The refund claimed on January 21, 2010 on

behalf of P.C. was directed to be deposited into a Bank of America account of KEITH HEBB;

(vii)     a return filed in the name of D.D. on or about January 22, 2010

utilizing Social Security number xxx-xx-8416. The refund claimed on January 22, 2010 on

behalf of D.D. was directed to be deposited into a Palm Desert National Bank account of ROMEL

TOMLIN;

(viii)     a return filed in the name of L.D. on or about January 15, 2010

utilizing Social Security number xxx-xx-9473. The refund claimed on January 15, 2010 on

behalf of L.D. was directed to be deposited into a Bank of America account of KEITH HEBB;

(ix)     a return filed in the name of K.H. on or about January 15, 2010

utilizing Social Security number xxx-xx-8374. The refund claimed on January 15, 2010 on

behalf of K.H. was directed to be deposited into a Bank of America account of KEITH HEBB;

(x)     the previously referenced return filed in the name of A.T. on or

about February 9, 2010 utilizing Social Security number xxx-xx-8046. The refund claimed on

February 9, 2010 on behalf of A.T. was directed to be deposited into a Commerce Bank account of

KEITH HEBB;

12

(xi) a return filed in the name of D.T. on or about January 15, 2010 utilizing Social Security number xxx-xx-6682. The refund claimed on January 15, 2010 on behalf of D.T. was directed to be deposited into a Bank of America account of KEITH HEBB;

(xii) a return filed in the name of M.W. on or about January 21, 2010 utilizing Social Security number xxx-xx-2930. The refund claimed on January 21, 2010 on behalf of M.W. was directed to be deposited into a Bank of America account of KEITH HEBB;

(xiii) a return filed in the name of E.S. on or about March, 3, 2010 utilizing Social Security number xxx-xx-2343. The refund claimed on March, 11, 2010 on behalf of E.S. was directed to be deposited into a Woodforest National Bank account of ROMEL TOMLIN;

(xiv) the previously referenced return filed in the name of T.A. on or about March 30, 2010 utilizing Social Security number xxx-xx-1008. The refund claimed on March 30, 2010 on behalf of T.A. was directed to be deposited into a Woodforest National Bank account of ROMEL TOMLIN; and

(xv) the previously referenced return filed in the name of T.B. on or about April 1, 2010 utilizing Social Security number xxx-xx-9194. The refund claimed on April 1, 2010 on behalf of T.B. was directed to be deposited into a Bank of America account of JERMAINE IRONS.

g. On or about June 10, 2010, a federal income tax return was filed in the name of M.D., utilizing Social Security number xxx-xx-4966, claiming wages in the amount of $27,262. The claimed refund was directed to be deposited into a MetaBank prepaid card account in the name of ROMEL TOMLIN. Other false federal income tax returns and W-2s, with an asserted false wage of $27,262, as reflected on both the filed return and the W-2, include:

13

(i)     a return filed on or about September 17, 2010, in the name of E.O.,

utilizing Social Security number xxx-xx-6591, claiming wages in the amount of $27,262.   The

refund claimed on September 17, 2010 on behalf of E.O. was directed to be deposited into a Bank

of America account of KEITH HEBB;

(ii)    a return filed on or about September 28, 2010, in the name of G.B.,

utilizing Social Security number xxx-xx-2625, claiming wages in the amount of $27,262.   The

refund claimed on September 28, 2010 on behalf of G.B. was directed to be deposited into a Bank

of America account of JERMAINE IRONS;

(iii)   a return filed on or about September 20, 2010, in the name of D.F.

utilizing Social Security number xxx-xx-1189.   The refund claimed on September 20, 2010 on

behalf of D.F. was directed to be deposited into a Palm Desert National Bank Account of ROMEL

TOMLIN;

(iv)    a return filed on or about October 12, 2010, in the name of B.S.

utilizing Social Security number xxx-xx-1194.   The refund claimed on October 12, 2010 on

behalf of B.S. was directed to be deposited into a Bank of America account of JERMAINE

IRONS;

(v)     a return filed on or about October 12, 2010, in the name of M.R.

utilizing Social Security number xxx-xx-8623.   The refund claimed on October 12, 2010 on

behalf of M.R. was directed to be deposited into a Bank of America account of JERMAINE

IRONS;

(vi)    a return filed on or about August 23, 2010, in the name of S.H.

utilizing Social Security number xxx-xx-6601.   The refund claimed on August 23, 2010 on behalf

14

of S.H. was directed to be deposited into a Palm Desert National Bank account of ROMEL TOMLIN;

        h.      E.O., whose return was referenced above, was a client of, and received services from, UMOM. B.S., whose return was also referenced above, was a client of, and received services from, UMOM. M.R., whose return was referenced above, was a client of, and received services from, UMOM. Other false federal income tax returns filed in the name of clients of UMOM include:

        (i)      a return filed on or about February 14, 2012, in the name of L.S. utilizing Social Security number xxx-xx-1974, a UMOM client;

        (ii)      a return filed on or about October 13, 2010, in the name of M.B. utilizing Social Security number xxx-xx-9251, a UMOM client;

        (iii)      a return filed on or about January 19, 2011, in the name of M.B. utilizing Social Security number xxx-xx-9251, a UMOM client;

        (iv)      a return filed on or about May 15, 2012, in the name of M.B. utilizing Social Security number xxx-xx-9251, a UMOM client;

        (v)      a return filed on or about January 26, 2010, in the name of D.E. utilizing Social Security number xxx-xx-9436, a UMOM client;

        (vi)      a return filed on or about April 5, 2011, in the name of M.L. utilizing Social Security number xxx-xx-6147, a UMOM client;

        (vii)      a return filed on or about June 6, 2012, in the name of A.M. utilizing Social Security number xxx-xx-8772, a UMOM client;

        (viii)      a return filed on or about October 16, 2010, in the name of I.N. utilizing Social Security number xxx-xx-7426, a UMOM client;

(ix)     a return filed on or about January 26, 2011, in the name of I.N.

utilizing Social Security number xxx-xx-7426, a UMOM client;

(x)     a return filed on or about May 31, 2012, in the name of I.N. utilizing

Social Security number xxx-xx-7426, a UMOM client;

(xi)     a return filed on or about January 27, 2012, in the name of K.M.

utilizing Social Security number xxx-xx-1408, a UMOM client;

(xii)     In addition to the September 17, 2010, return, filed in the name of

UMOM client E.O., and claiming a refund and directing said refund be deposited into a Bank of

America account in the name of KEITH HEBB, on or about January 19, 2011, another return, for

tax year 2010, was filed in the name of E.O. utilizing Social Security number xxx-xx-6591. The

claimed refund for tax year 2010 was directed to be deposited into a Bank of America account in

the name of JERMAINE IRONS;

(xiii)     In addition to the October 12, 2010 return filed in the name of

UMOM client B.S., claiming a refund and directing said refund be deposited into a Bank of

America account in the name of JERMAINE IRONS, on or about February 10, 2011, another

return, for tax year 2010, was filed in the name of B.S. utilizing Social Security number

xxx-xx-1194. The claimed refund for tax year 2010 was directed to be deposited into a Bank of

America account in the name of KEITH HEBB;

(xiv)     In addition to filing false claims in the name of UMOM clients,

UMOM was claimed as employer on two false returns. On or about October 12, 2010, a return

was filed in the name of A.E., utilizing Social Security number xxx-xx-8509, claiming wages from

employer UMOM. The claimed refund was directed to be deposited into a Woodforest National

Bank account in the name of ROMEL TOMLIN. On or about March 18, 2011, a return was filed

16

in the name of V.W., utilizing Social Security number xxx-xx-9111, claiming wages from employer UMOM. The claimed refund was directed to be deposited into a Bank of America account in the name of KEITH HEBB.

           i.     As part of the scheme, multiple false federal income tax returns were filed in February of 2011, generating refunds deposited in February and March of 2011, including the previously referenced February 10, 2011 return filed in the name of B.S., generating a transfer of funds by the IRS, on or about February 25, 2011, in the amount of $1,274 with said funds being directly deposited, on or about February 25, 2011, into a Bank of America account in the name of, and controlled by, KEITH HEBB. Interstate wire communications, namely telephone calls, were made as part of, and in furtherance of the scheme, including, but not limited to, the following telephone calls made in February of 2011:

           (i)     Between on or about February 8, 2011 and on or about February 10, 2011, approximately thirteen or more calls were made from a phone number registered in the name of ROMEL TOMLIN to a phone number registered in the name of KEITH HEBB; approximately 9 calls were made from a phone number registered in the name of KEITH HEBB to the IRS; approximately 12 calls were made from a phone number registered in the name of KEITH HEBB to the U.S. Treasury; approximately 2 or more calls were made from a phone number registered in the name of KEITH HEBB to Bank of America's Customer Service toll-free 800 number;

           (ii)     Between on or about February 11, 2011 and on or about February 23, 2011, approximately 17 or more calls were made from a phone number registered in the name of ROMEL TOMLIN to a phone number registered in the name of KEITH HEBB; approximately 2 or more calls were made from a phone number registered in the name of KEITH HEBB to a phone number registered in the name of ROMEL TOMLIN; approximately 9 calls were made

17

from a phone number registered in the name of KEITH HEBB to the IRS; approximately 12 calls were made from a phone number registered in the name of KEITH HEBB to the U.S. Treasury; approximately 26 or more calls were made from a phone number registered in the name of KEITH HEBB to Bank of America's Customer Service toll-free 800 number; approximately 3 or more calls were made from a phone number registered in the name of JERMAINE IRONS to Bank of America's Customer Service toll-free 800 number;

(iii)     Between on or about February 24, 2011 and on or about February 26, 2011, approximately 17 or more calls were made from a phone number registered in the name of ROMEL TOMLIN to a phone number registered in the name of KEITH HEBB; approximately 2 or more calls were made from a phone number registered in the name of KEITH HEBB to a phone number registered in the name of ROMEL TOMLIN; approximately 19 or more calls were made from a phone number registered in the name of JERMAINE IRONS to the IRS; approximately 10 or more calls were made from a phone number registered in the name of KEITH HEBB to the U.S. Treasury; approximately 19 or more calls were made from a phone number registered in the name of KEITH HEBB to Bank of America's Customer Service toll-free 800 number.

j.     As part of the scheme, claimed refunds were directly deposited by wire and ACH transfer into accounts controlled by the co-conspirators including, but not limited to, the following direct deposits into Bank of America accounts established and controlled by KEITH HEBB:

(i)     on or about January 29, 2010, a federal tax refund utilizing Social Security number xxx-xx-2773 in the amount of $5,042 for Y.A. was directly deposited into a Bank of America bank account in the name of KEITH HEBB;

18

(ii)     on or about January 29, 2010, a federal tax refund utilizing Social

Security number xxx-xx-9473 in the amount of $6,407 for L.D. was directly deposited into a Bank

of America Bank Account in the name of KEITH HEBB;

(iii)    on or about January 25, 2011 a federal tax refund utilizing Social

Security number xxx-xx-2625 in the amount of $5,252 for G.B. was directly deposited into a Bank

of America bank account in the name of KEITH HEBB;

(iv)     on or about February 25, 2011, a federal tax refund utilizing Social

Security number xxx-xx-1194 in the amount of $1,274 for B.S. was directly deposited into a Bank

of America bank account in the name of KEITH HEBB;

(v)      on or about February 3, 2012, a federal tax refund utilizing Social

Security number xxx-xx-9436 in the amount of $7,237 for D.E. was directly deposited into a Bank

of America bank account in the name of KEITH HEBB;

k.       On various dates between 2009 and July 2012, in the Eastern District of

Missouri, and elsewhere, ROMEL TOMLIN, TYRA TOMLIN, KEITH HEBB and JERMAINE

IRONS utilized money transfer services, such as Western Union, to send and receive proceeds of

the scheme by wire including money transfers sent to ROMEL TOMLIN from the Eastern District

of Missouri and received by ROMEL TOMLIN in Texas including, but not limited to, the

following:

(i)      On or about March 26, 2010, the previously referenced federal

income tax refund of K.D., in the amount of $4,407, was deposited into a bank account controlled

by KEITH HEBB. On or about March 26, 2010, KEITH HEBB withdrew $4,000 from said

account by means of a bank counter withdrawal at a bank branch in the Eastern District of

Missouri. On or about March 26, 2010, KEITH HEBB then transferred money in the Eastern

District of Missouri, through Western Union, to ROMEL TOMLIN in Texas. The transferred amount was received by ROMEL TOMLIN in Texas and was deposited into his Woodforest Bank account. On or about March 11, 2010, a federal tax refund claimed in the name of E.S., utilizing Social Security number xxx-xx-2343, was directly deposited into the same Woodforest Bank account;

(ii) On January 28, 2011, the previously referenced refund of E.O. was directly deposited into an account in the name of, and controlled by, JERMAINE IRONS. On January 28, 2011, in the Eastern District of Missouri, JERMAINE IRONS made three withdrawals, specifically one counter withdrawal in the amount of $4,200 and two ATM withdrawals each in the amount $500, from said account. On or about January 28, 2011, the previously referenced refund of M.S. and the previously referenced refund of A.T., were directly deposited into an account of TYRA TOMLIN. A counter withdrawal in the amount of $2000 was then made by TYRA TOMLIN in the Eastern District of Missouri. On or about January 28, 2011, the defendants transferred, and caused to be transferred, money, through Western Union, to ROMEL TOMLIN in Texas by three separate wires: a wire transfer in the amount of $1,200 from the Eastern District of Missouri which was received by ROMEL TOMLIN in Texas; a wire transfer in the amount of $1,840 initiated and sent by TYRA TOMLIN from the Eastern District of Missouri which was received by ROMEL TOMLIN in Texas; and a wire transfer in the amount of $2,000 initiated and sent by KEITH HEBB from the Eastern District of Missouri which was received by ROMEL TOMLIN in Texas.

26. Beginning on or about sometime prior to 2009, with the exact date unknown to the Grand Jury, and continuing until on or about July 12, 2012, with the exact date unknown to the Grand Jury, in the Eastern District of Missouri and elsewhere, the defendants,

20

**ROMEL TOMLIN,**
**TYRA TOMLIN,**
**KEITH HEBB, and**
**JERMAINE IRONS,**

did knowingly and willfully conspire, combine, confederate, and agree with each other and with

other persons to devise a scheme and artifice to defraud and to obtain money and property by

means of materially false and fraudulent pretenses, representations, and promises, and to

knowingly use and cause to be used interstate wire communications facilities in carrying out the

scheme to defraud, in violation of Title 18, United States Code, Section 1343.

In violation of Title 18, United States Code, Section 1349.

## COUNT TWO

27.     The allegations contained in paragraphs 1-25 of Count One are incorporated by

reference as if fully set forth herein.

28.     Between on or about February 25, 2010, and March 26, 2010, in the Eastern

District of Missouri and elsewhere, the defendants,

**ROMEL TOMLIN,**
**TYRA TOMLIN,**
**KEITH HEBB, and**
**JERMAINE IRONS,**

did knowingly embezzle, steal, purloin, and convert to their own use and the use of another money

of the United States and a department and agency thereof, to wit, the United States Department of

the Treasury, in the amount of $4,407, said funds constituting a fraudulent income tax refund

claimed and issued in the name of K.D., Social Security number xx-xx-3463, and did receive,

conceal, and retain the same with intent to convert it to their own use and gain, knowing it to have

been embezzled, stolen, purloined and converted.

In violation of Title 18, United States Code, Sections 641 and 2.

21

## COUNT THREE

29.    The allegations contained in paragraphs 1-25 of Count One are incorporated by reference as if fully set forth herein.

30.    Between on or about January 18, 2011, and January 28, 2011, in the Eastern District of Missouri and elsewhere, the defendants,

**ROMEL TOMLIN,**
**TYRA TOMLIN,**
**KEITH HEBB, and**
**JERMAINE IRONS,**

did knowingly embezzle, steal, purloin, and convert to their own use and the use of another money of the United States and a department and agency thereof, to wit, the United States Department of the Treasury, in the amount of $1,197, said funds constituting a fraudulent income tax refund claimed and issued in the name of A.T., Social Security number xxx-xx-8046, and did receive, conceal, and retain the same with intent to convert it to their own use and gain, knowing it to have been embezzled, stolen, purloined and converted.

In violation of Title 18, United States Code, Sections 641 and 2.

## COUNT FOUR

31.    The allegations contained in paragraphs 1-25 of Count One are incorporated by reference as if fully set forth herein

32.    Between on or about October 12, 2010 and October 22, 2010, in the Eastern District of Missouri and elsewhere, the defendants,

**ROMEL TOMLIN,**
**TYRA TOMLIN,**
**KEITH HEBB, and**
**JERMAINE IRONS,**

22

did knowingly embezzle, steal, purloin, and convert to their own use and the use of another money of the United States and a department and agency thereof, to wit, the United States Department of the Treasury, in the amount of $1,193, said funds constituting a fraudulent income tax refund claimed and issued in the name of B.S., Social Security number xxx-xx-1194, and did receive, conceal, and retain the same with intent to convert it to their own use and gain, knowing it to have been embezzled, stolen, purloined and converted.

In violation of Title 18, United States Code, Sections 641 and 2.

## COUNT FIVE

33.     Between on or about September 17, 2010 and January 28, 2011, in the Eastern District of Missouri and elsewhere,

## ROMEL TOMLIN, TYRA TOMLIN, KEITH HEBB, and JERMAINE IRONS,

the defendants herein, did knowingly transfer, possess and use, without lawful authority, a means of identification of another person, that is, E.O., Social Security number xxx-xx-6591, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c)(1), that is, the felony violation of conspiracy to commit wire fraud as charged in Count One of this indictment, and the felony violation of theft of public money greater than $1,000 in violation of Title 18, United States Code, Section 641.

In violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

## COUNT SIX

34.     Between on or about February 25, 2010 and March 26, 2010, in the Eastern District of Missouri and elsewhere,

**ROMEL TOMLIN,**
**TYRA TOMLIN,**
**KEITH HEBB, and**
**JERMAINE IRONS,**

the defendants herein, did knowingly transfer, possess and use, without lawful authority, a means

of identification of another person, that is, K.D., Social Security number xxx-xx-3463, during and

in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c)(1),

that is, the felony violation of conspiracy to commit wire fraud as charged in Count One of this

indictment, and the felony violation of theft of public money greater than $1,000, as charged in

Count Two of this indictment.

In violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

### COUNT SEVEN

35.     Between on or about February 9, 2010 and January 28, 2011, in the Eastern District

of Missouri and elsewhere,

**ROMEL TOMLIN,**
**TYRA TOMLIN,**
**KEITH HEBB, and**
**JERMAINE IRONS,**

the defendants herein, did knowingly transfer, possess and use, without lawful authority, a means

of identification of another person, that is, A.T., Social Security number xxx-xx-8046, during and

in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c)(1),

that is, the felony violation of conspiracy to commit wire fraud as charged in Count One of this

indictment, and the felony violation of theft of public money greater than $1,000, as charged in

Count Three of this indictment.

In violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

24

## COUNT EIGHT

36.     Between on or about October 12, 2010 and February 25, 2011, in the Eastern District of Missouri and elsewhere,

**ROMEL TOMLIN,**
**TYRA TOMLIN,**
**KEITH HEBB, and**
**JERMAINE IRONS,**

the defendants herein, did knowingly transfer, possess and use, without lawful authority, a means of identification of another person, that is, B.S., Social Security number xxx-xx-1194, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c)(1), that is, the felony violation of conspiracy to commit wire fraud as charged in Count One of this indictment, and the felony violation of theft of public money greater than $1,000, as charged in Count Four of this indictment.

In violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

## FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

37.     Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, upon conviction of an offense in violation of Title 18, United States Code, Sections 1349 and 641 as set forth in Counts One through Four, the defendant(s) shall forfeit to the United States of America any property, real or personal, which constitutes, or is derived from proceeds traceable to said violation.

38.     Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to said offense.

39.     Pursuant to Title 18, United States Code, Sections 982(a)(2) and 1028(b), upon conviction of an offense in violation of Title 18, United States Code, Section 1028A as set forth

in Counts Five through Eight, the defendant(s) shall forfeit to the United States of America any property constituting, or derived from, proceeds the defendant(s) obtained, directly or indirectly, as a result of such violation and any personal property used or intended to be used to commit said offense.

40.     Subject to forfeiture is a sum of money equal to the total value of any property constituting, or derived from, proceeds the defendant(s) obtained, directly or indirectly, as a result of such violation and any personal property used or intended to be used to commit said offense.

41.     If any of the property described above, as a result of any act or omission of the defendant(s):

> a.     cannot be located upon the exercise of due diligence;
>
> b.     has been transferred or sold to, or deposited with, a third party;
>
> c.     has been placed beyond the jurisdiction of the court;
>
> d.     has been substantially diminished in value; or
>
> e.     has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____

FOREPERSON

RICHARD G. CALLAHAN
United States Attorney

_____
CHARLES S. BIRMINGHAM, #47134MO
Assistant United States Attorney

26